IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PATSY PAYNTER,

       Plaintiff,

v.                                        **CV 98-717 LH/RLP**

                                              **LEAD CASE**

STATE OF NEW MEXICO DEPARTMENT
OF HEALTH, *et al.,*

       Defendants.

CONSOLIDATED WITH

PATSY PAYNTER,

       Plaintiff,

v.                                      **CV 99-456 LH/RLP**

STATE OF NEW MEXICO, *et al.,*

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment

Addressing All Counts of Both Complaints  (Docket No. 55).  The Court, having considered the

briefs and applicable law, for the reasons that follow, concludes that Defendants' motion shall be **granted**. This results in the dismissal of all of Plaintiff's claims except her hostile work environment claim, which remains at issue.

Defendants also have a pending motion to dismiss (Docket No. 4 in CIV 99-456 LH/RLP). For purposes of this Memorandum Opinion and Order, the Court has presumed, without directly deciding, that Plaintiff's two complaints state causes of action under FED.R.CIV.P. 12(b)(6). In light of the resolution of the Motion for Summary Judgment, the Motion to Dismiss is **denied as moot.**

## I.  Summary Judgment Standards

Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The Court views the evidence and draws any inferences in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). If the moving party satisfies its initial burden of informing the district court of the basis for its motion, identifying the portions of the pleadings, depositions and the like which it believes demonstrate the absence of a genuine issue of material fact, *Celotex Corp. v. Catrett,*, 477 U.S. 317, 323 (1986), then the nonmoving party must identify sufficient evidence that would require submission of the case to a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986); *Tavery v. United States*, 32 F.3d 1423, 1431 n.1 (10th Cir. 1994). Entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrell*, 477 U.S. at 322. **II.**

**Procedural Overview**

  This litigation originally was brought by two plaintiffs.  Plaintiff Susan Crifasi withdrew

from the litigation and was dismissed as a party by stipulated order of the Court, entered on

January 14, 2000 (Docket No. 38).  For greater clarity in this Memorandum Opinion and Order,

the Court will refer to the remaining plaintiff only.

  Two complaints have been filed in this litigation.  "Complaint I" was filed in state court on

May 5, 1998, and alleges that Plaintiff was subjected to racial discrimination, retaliation and a

hostile work environment under Title VII.  In addition, Complaint I is for breach of contract.

This complaint was removed to federal court on June 17, 1998.  Complaint II was  filed on April

26, 1999 and alleges further retaliation, breach of contract and violation of First Amendment

constitutional rights.

  The Court notes that both of these complaints were filed against several defendants,

including "John and Jane Does I through X."  Except for the caption, Complaint I makes no

mention of these defendants.  Complaint II states that their "identities are not now known to

Plaintiff, [they] were employed by Defendants and were supervised by Valdez and/or Johnson.

Defendants 1 through X are sued in their individual capacities and will be substituted as their

identities become known."

  This litigation has been ongoing since June of 1998 and Plaintiff has made no move to

amend her complaint to add these defendants.  This case is set for an October 16, 2000 jury trial.

Plaintiff has not provided an adequate description to identify these ten persons.  Accordingly, it is

impossible to include these defendants in the Court's analysis of the dispositive motion currently

before it.  Furthermore, even if they were immediately identified by Plaintiff, it would be

prejudicial and inherently unfair to add them at this very late stage of the litigation.  Accordingly,

this litigation is hereby **dismissed** against these unnamed defendants for failure to prosecute the

case against them.  *See Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir. 1996).  *See also Colle v.*

*Brazos County, Tex*, 981 F.2d 237, 242-43 (5th Cir. 1993).


### III.  Title VII Claims

#### A.  Personal Liability of Individual Defendants

The law of the Tenth Circuit is clearly established that personal capacity suits against

individual supervisors are inappropriate under Title VII.  *Haynes v. Williams*,  88 F.3d 898, 901

(10th Cir. 1996).  *See also Sauers v. Salt Lake County,*  1 F.3d 1122, 1125 (10th Cir. 1993).

Complaint I sues Defendants Cleveland, Pierce and Wolfarth in their official and individual

capacities.  All Title VII claims against these three defendants in their personal capacities are

hereby **dismissed.**


#### B.  Racial Discrimination Claim

Title VII prohibits discrimination by an employer "against any individual with respect to

his compensation, terms, conditions, or privileges of employment, because of such individual's

race, color, religion, sex, or national origin ...."  42 U.S.C. § 2000e-2(a)(1)(1982).  I have

carefully read both complaints as well as Plaintiff's response brief to ascertain  exactly which of

Defendants' actions or inactions she contends constituted racial discrimination.  Plaintiff's brief

relies on her testimony that Ms. Wolfarth, her immediate supervisor, made a remark that "Blacks

and Hispanics are dumb." (Paynter depo. at 52).  She also testified that Ms. Wolfarth made the

statements that "Hispanics like color", that her neighbors were "the color of this [black] table",

and inferring that Arican-Americans were untrustworthy. (*Id.* at 52, 57, 65-67).  Plaintiff testified

that Ms. Wolfarth would not establish eye contact with her and belittled  her (*Id.* at 126).  She

testified that she was not allowed to go to a training session (*Id.* at 132), but could not recall any

time when her request to be permitted to attend training was denied.  (*Id.* at 133).  Characterizing

these actions as "continuous harassment", Ms. Paynter filed an EEOC discrimination charge on

October 1, 1997.

Defendants argue that Plaintiff was not treated differently from similarly situated

individuals, that in fact she suffered no adverse employment action, and that her national origin

was not a determining factor in any challenged decision.

*McDonell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and subsequent decisions have

"established an allocation of the burden of production and an order for the presentation of proof

in Title VII discriminatory-treatment cases."  *St. Mary's Honor Center v. Hicks,* 509 U.S. 502,

506 (1993).  First the plaintiff must establish a  *prima facie* case of discrimination.  *Id.*; *Texas*

*Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-253 (1981).

To support her Title VII claim for race discrimination, Plaintiff must first establish a prima

facie case by showing that (1) she was a member of a protected class, (2) her employment

situation was adversely affected by her employer's action, practice or policy, (3) she was

performing her job satisfactorily, and (4) she was treated less favorably than similarly situated

employees not in her protected class.  *See Kenworthy v. Conoco, Inc.*, 979 F.2d 1462, 1469 (10th

Cir. 1992);  *see also Elmore v. Capstan, Inc.*, 58 F.3d 525, 529 (10th Cir. 1995)(applying a

similar test without third prong); *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1403 (10th Cir. 1997).

For the purposes of Title VII, similarly situated employees are those who deal with the same

supervisor and are subject to the same standards governing performance evaluations and

discipline. *See Id.* at 1404.  The failure of a plaintiff to identify a similarly situated employee who

was treated more favorably than the plaintiff, like the failure to meet any of the prima facie

prongs, entitles the defendant to summary judgment.  *See Morgan v. Hilti, Inc.*, 108 F.3d 1319,

1323-24 (10th Cir. 1997).  Plaintiff has failed to satisfy the fourth prong of the above-stated test

by failing to demonstrate that any similarly situated employee, who was not in her protected class,

was treated more favorably by the Defendants.  The only statement I could find in Plaintiff's brief

along these lines was to the effect that "[F]lex and exercise time still continue for others."

(Plaintiff's Resp. to Defendants' Mot. for Sum. Judg. at 13).  Plaintiff's argument section of her

brief, directed to the retaliation and discrimination issues, is four sentences in length and woefully

inadequate.  As Plaintiff has failed to identify a similarly situated employee who was treated more

favorably than herself, or to even allege that one existed, she has failed to establish a *prima facie*

case.  Therefore, Defendants' motion for summary judgment on racial discrimination under Title

VII will be granted and this claim shall be dismissed.


### C.  Hostile Work Environment

Separate from the issue of racial discrimination is Plaintiff's claim of a hostile work

environment (Complaint I, Count II).  I have carefully reviewed both of Defendants' summary

judgment briefs on this issue and find no arguments on this issue, contrary to the title of their

motion, "Motion for Summary Judgment Addressing *All* Counts of Both Complaints" (emphasis

added).  In the absence of any briefing on this topic, I am unable to determine if there are any

disputes of material facts on the issue.  Furthermore, Plaintiff has not had an opportunity to

address the specifics of her ultimate burden of proof.  Consequently, this issue cannot now be

decided by the Court.

Although Title VII does not explicitly mention hostile work environment, a victim of a

racially hostile work environment may nevertheless bring a cause of action under Title VII.

*Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986); *Bolden v. PRC, Inc.,* 43 F.3d 545,

550 (10th Cir. 1994).  I note that to avoid dismissal on a hostile environment claim, a plaintiff    "

'must show that a rational jury could find that the workplace is permeated with discriminatory

intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of

the victim's employment and create an abusive working environment.' "  *Penry v. Federal Home*

*Loan Bank.*, 155 F.3d 1257, 1261 (10th Cir. 1998)(*quoting Davis v. United States Postal Serv.,*,

142 F.3d 1334, 1341 (10th Cir. 1998).  Plaintiff must not only show she subjectively perceived

the environment as hostile or abusive, but that her perception was objectively reasonable.  *Davis*

*v. United States Postal Serv.*, 142 F.3d at 1341.  In considering whether a plaintiff has made a

requisite showing, the Court will consider a variety of factors, including, "the frequency of the

discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work

performance."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).  Whether the complained of

conduct is sufficiently pervasive to create a hostile work environment must be determined from

the totality of the circumstances because no single factor is required.  *Id.*   Harassment of workers

other than the plaintiff may be considered in evaluating a claim.  *Hick v. Gates Rubber Co.*, 833

F.2d 1406, 1415-16, (10th Cir. 1987); *see also Stahl v. Sun Microsystems, Inc.*, 19 F.3d 533, 538 (10th Cir. 1994).

The record currently before me does not meet these standards, however in the interest of justice, because the matter was not briefed by Defendants and because Plaintiff has not had an adequate opportunity to expressly address her hostile work environment claim, the Court will not address this claim *sua sponte*.  It is possible that other proof could by adduced by Plaintiff as to the overall working environment that would meet the standards of proof set forth above.  For these reasons, this claim shall remain in the case.

### D.  Retaliation/Reprisal Claim

Defendants also seek summary judgment on Plaintiff's reprisal and/or retaliation claims. At the outset of this analysis, I note that this claim has been nearly impossible for the Court to evaluate, given that Plaintiff's relevant argument section of her response brief consists of four sentences.  Plaintiff's failure to explain her position to the Court necessitated the overly time-consuming and arduous task of combing through the 14 page rambling "Introduction" section of her brief, in an attempt to view the evidence in a light most favorable to her case.  Plaintiff's counsel is cautioned against this type of sloppy practice in the future.

The *McDonnell Douglas* framework applies to Title VII retaliation claims just as it does to the Title VII disparate treatment claim disposed of earlier.  To establish a *prima facie* case of retaliation, Plaintiff must show that (1) she engaged in an activity protected by Title VII, (2) an adverse employment action was taken against her subsequent to the protected activity, and (3) there was a causal connection between her participation in the activity and the adverse

8

employment action.  *See Perry v. Woodward,* 199 F.3d 1126, 1134-35 (10th Cir. 1999).  Under

the *McDonnell Douglas* burden-shifting paradigm,  Defendants must then  articulate legitimate,

nondiscriminatory reasons, using admissible evidence, to explain their actions.  *Texas Dep't of*

*Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Defendants' burden at this juncture is

one of production.  *Id*.  If Defendants proffer such  legitimate business reasons for their actions,

they successfully rebut the presumption of retaliation.  The burden then shifts back to Plaintiff to

prove that Defendants' reasons are a mere pretext for unlawful discrimination.  *Id*. at 256.

Throughout these stages, the overall burden of persuasion remains with Plaintiff.  *Id.*

Under the circumstances in this case, the only aspect in dispute in Plaintiff's *prima facie*

case is the second prong, that of the element of an adverse employment action. Obviously, the

first prong of the test has been met:  on October 1, 1997, Plaintiff filed an EEOC charge, which

qualifies as a "protected activity" under Title VII.  The third prong has been satisfied, because

causation may be inferred if an adverse employment action is closely connected in time to the

protected conduct.  *See Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997).

Here, Plaintiff argues that 28 days after she filed her EEOC charge, Defendants scheduled a

meeting with her to criticize her work performance.  A memo to document the meeting was given

to her approximately 15 days later.  She claims other adverse employment actions in early

November 1997.  For purposes of this analysis, to the extent that I conclude that the complained-

of actions constitute "adverse employment actions", I conclude that Plaintiff has met the causation

prong, the third prong of her *prima facie* test.

The question then becomes, were the  complained-of actions retaliatory conduct and

sufficient to constitute an "adverse employment activity", i.e., has the second prong of the test

been met?

In recognition of the remedial nature of Title VII, the Tenth Circuit liberally defines the term "adverse employment action".  *Jeffries v. Kansas*, 147 F.3d 1220, 1231-32 (10th Cir. 1998). *Jeffries* noted that the Tenth Circuit takes a case-by-case approach to determining whether a given employment action is adverse.  In *Gunnell v. Utah Valley State College,* 152 F.3d 1253 (10th Cir. 1998)*,* the Tenth Circuit considered  whether co-worker hostility can be considered intentional retaliation on the part of the employer.   In this instance, however, the relevant alleged actions were taken by supervisory personnel, who, as discussed above,  may not be personally liable under Title VII, but who may nonetheless create liability for the employer.[1]

Plaintiff appears to argue that her being called into a meeting with Ms. Kennedy and Ms. Wolfarth on October 29, 1997 was an act of reprisal.  At this meeting, her performance and job skills were criticized, she was instructed not to do several things, and, if she failed to comply, she was threatened with "disciplinary action up to and including dismissal."  (*See* Ex. 4 to Defendants' Ex. A).

The parties disagree as to whether Ms. Kennedy and Ms. Wolfarth knew about Plaintiff's EEOC complaint prior to the meeting.  Plaintiff argues that they were aware of it, based upon service of the charge on the Department of Health's (DOH's) counsel on October 22, 1997. Receipt by DOH counsel does not establish knowledge on the part of Ms. Kennedy and Ms. Wolfarth, however.   According to Ms. Kennedy's handwritten minutes of the meeting, it was at

---

[1]  It is Plaintiff's position that, after filing her EEOC charge of discrimination on October 1, 1997, she was immediately subjected to reprisal.  Her briefs mention two anonymous complaints filed against her on October 2, 1997 and on October 7, 1997.  (Exs. 2 and 3 to Defendants' Ex. A).  These letters appear to have been written by non-supervisory employees.  Although the letters' existence may be relevant for another purpose, they are not evidence of retaliatory action by supervisory defendants, and will not be considered in this analysis.

this meeting that Plaintiff informed Ms. Wolfarth and her that she had filed a charge of

discrimination. (Plaintiff's Ex. 9).  According to Ms. Wolfarth's affidavit, neither she nor Ms.

Kennedy was aware at any time prior to November 24, 1997,  that an actual charge had been filed

with the EEOC. (Wolfarth affidavit at ¶ 12).  I conclude that Wolfarth and Kennedy could not

have scheduled the meeting as retaliation for filing of the EEOC charge, for the simple reason that

they did not know about the filing of the charge until the meeting occurred.

The next adverse employment action claimed by Plaintiff is a November 13, 1997 memo

she received, documenting the contents of the October 29, 1997 meeting. (Ex. 4 to Defendants'

Ex.  A).  Plaintiff contrasts the contents of the memo with her September 5, 1997 performance

evaluation, which contained none of these criticisms, rated her performance as "very good" and

"satisfactory", and recommended a merit pay increase.  (Wolfarth Depo. 102-104, Ex. 2 & 3).

Plaintiff argues that other adverse employment actions occurred, including the recission of

flex time on November 11, 1997, a change of her exercise time a day or two later (Paynter Depo.

at 83-90), and her removal from the Legislative Advocacy Committee on November 15, 1997

(Ex. 9 to Defendants' Ex. A).

On November 17, 1997, Plaintiff amended her EEOC charge to include retaliation and she

also filed various union grievances.  She claimed that job duties were taken from her, threats to

disallow her Family Medical Leave Act  ("FMLA") were made[2], apparently in March of 1997, and

that she was denied training.  (Ex. A, Paynter Depo. at 70, 79-80)  Plaintiff also testified that she

was denied a training session  (Paynter Depo. at 132), although she stated that she could not

---

[2]  Plaintiff's only citation to the record in support of her allegations on the FMLA issue is to her
deposition at page 70.  This alleged action occurred several months *before* Plaintiff filed her EEOC charge and is
accordingly disregarded as evidence of retaliation.

recall  any time when her request to be permitted to attend training was denied.  (*Id*. at 133).

Finally, although she claims that she has been scrutinized more closely than any other clerk (*Id*. at

100), she stated that she did not know whether the accuracy percentage required is the same for

all other clerks.  (*Id*.). She did not know whether other clerks' records and their data entry was

audited.  (*Id*. at 107)  Auditing of her work began in late August 1999 (*Id.*. at 108).

After consideration of the foregoing, I conclude that Plaintiff's evidence is sufficient to

raise a genuine factual dispute as to whether she suffered adverse employment actions with regard

to these actions only:  the  November 13, 1997 memo, recission of flex time, and deletion of

duties.  These three complained-of actions meet the liberal definition of the Tenth Circuit for

"adverse employment actions".  *See Jeffries v. Kansas*, 147 F.3d at 1231-32.

In contrast, the evidence involving the denial of a  training session and increased scrutiny

of Plaintiff's work do not raise a genuine factual dispute as to whether she suffered adverse

employment action.  I am not convinced, based on the record before me, that these two things

actually happened.  If they did, Plaintiff has not shown that they affected the terms or conditions

of her employment, something that Plaintiff must show.  *Fortner v. Kansas*, 934 F. Supp. 1252,

1268 (D.Kan. 1996).  Furthermore, I conclude that a change in the timing of Plaintiff's allowable

exercise time (requiring her to take it during the day) was not an adverse employment action.

Finally, there is a lack of information in the record before me as to the existence of the Legislative

Advocacy Committee and its relevance to Plaintiff's employment.[3] For this reason I am unable to

---

[3]  Plaintiff's Exhibit 9, Ms. Kennedy's hand-written notes from the October 29, 1997 meeting indicate:
"Patsy ... Legislative Advocacy Committee:  removed from list."  Ms. Wolfarth, Plaintiff's supervisor, testified that
she knew that Plaintiff felt she was on the committee but that she did not know whether or not in fact she was
(Wolfarth depo. at 98).

conclude that removal of Plaintiff from this Committee constitutes an adverse employment action.

The Court next examines the Defendants' proffer concerning their legitimate, nondiscriminatory business reasons for taking the five actions remaining at issue. The Court reviewed all materials submitted by the Defendants and concludes that Defendants met their burden of production.

The November 13, 1997 memo documented counseling of Plaintiff about improving her performance on specific tasks and outlined conduct that would not be permitted in the office as well as conduct that was expected of Plaintiff (Ex. 4 to Defendants' Ex. A). According to the affidavit of Carol Pierce Philips, Director of Public Health District I, because two complaints were received about Plaintiff's work performance, a corrective action plan was developed "to resolve the complaints and improve [Plaintiff's] work-related performance as well as office morale, which was adversely affected by her misconduct" (Plaintiff's Ex. 13). " That plan was written on October 27, 1997 and was discussed with [Plaintiff] on October 29, 1997 ..." *Id.* Ms. Philips stated in her affidavit that the directives of this plan were formalized in the November 13, 1997 memo.

 In the instance of the decision to remove flex time from all of the clerks, Defendants have indicated that the management team, as opposed to any individual defendants, decided to rescind flex time of other clerks and nurses. The reasoning for elimination of flex time included concerns that the office was not adequately staffed; because flexible work schedules were having a detrimental effect on some client services, including clinics;  to ensure that client services were the office priority; to eliminate hardships for staff who covered for employees on flex schedules (Kennedy affidavit at ¶ 7).  Similar statements are found in the affidavit of Carol Philips

13

(Plaintiff's Ex. 13).

Defendants' explanation about deletion of duties for Plaintiff is twofold:  (1)  these duties were transferred to someone else when Plaintiff took extended leave and they were simply never returned to her;  (2)  because Plaintiff was not completing travel vouchers in a timely fashion.

The Court concludes that Defendants sufficiently articulated legitimate, nondiscriminatory reasons for each of the three adverse employment actions still under consideration.

To withstand summary judgment, Plaintiff must now present evidence sufficient to raise a genuine dispute of material fact as to whether or not Defendants' articulated reasons for the adverse employment actions are pretextual.  *See Reeves v. Sanderson Plumbing Prods., Inc.,*  120 S.Ct. 2097, 2102 (2000)("[A] plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."),  *See also Randle v. City of Aurora*, 69 F.3d 441, 453 (10th Cir. 1995).  A plaintiff establishes pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder  could rationally find them unworthy of credence." *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1317 (10th Cir.1999)(*quotation omitted*). Evidence sufficient to raise genuine questions whether an employer's proffered explanation is pretextual may "take a variety of forms."  *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 578 (1978).

The Tenth Circuit recently summarized the three ways a plaintiff typically makes a showing of pretext:  "(1)  with evidence that the defendant's stated reason for the adverse employment action was false, ... (2)  with evidence that the defendant acted contrary to a written

14

company policy prescribing the action to be taken by the defendant under the circumstances, ...

(3)  with evidence that the defendant acted contrary to an unwritten policy or contrary to

company practice when making the adverse employment decision affecting the plaintiff."

*Kendrick v. Penske Transp. Serv., Inc.*, 2000 WL 1114262, *8 (Aug. 8, 2000, 10th Cir.).

      Plaintiff's rebuttal to the 1997 November memo is a denial of misconduct and notation

that this criticism came only after she filed the EEOC charge.  (Paynter Depo. at 211, 186).  She

does not address or rebut the content of the complaints received against her, which according to

Ms. Philips, were the impetus for this memo and the prior meeting. *See* n.2, *infra*.

      On the flex time issue, Plaintiff refers the Court to Ms. Wolfarth's deposition at page 54,

for the proposition that when flex time was in place, coverage always existed, immunization

clinics had never been canceled and a clerk and nurse were always available.  She further asserts

that no one from the public had ever complained about the flex time or available coverage  (Ex.

11 – Kennedy Depo. at 102).  This argument ignores the administrative problems outlined by Ms.

Wolfarth in her deposition at pages 52-54.

      Plaintiff makes no pretext argument about the alleged denial of duties.

      Viewed in the aggregate, I conclude that Plaintiff's evidence is not sufficient to raise a

genuine doubt as to Defendants' motivation for the three remaining adverse employment actions.

A reasonable jury would not conclude that Defendants' proffered explanations for these actions

are not worthy of credence or are pretextual. Plaintiff has failed to produce sufficient evidence to

preclude the entry of summary judgment on her retaliation and reprisal claims under Title VII.

Therefore, these claims, as contained in Complaints I and II shall be **dismissed.**

## IV.  Breach of Contract Claims

Defendants' grounds for summary judgment on Plaintiff's breach of contract claims are threefold:  (1) that individual defendants should be dismissed because they personally did not enter into an employment contract with Plaintiff;  (2) that Plaintiff has failed to identify any specific contractual provisions that were breached;  and (3)  because Plaintiff failed to pursue her exclusive contract remedies.

I will address Defendants' second point first. The Court is cognizant that the Federal Rules of Civil Procedure do not require claimants to set out in intricate detail the facts on which they base their claims,  *Conley v. Gibson*, 355 U.S. 41, 47 (1957), but such deference does not extend to completely conclusory statements that fail to give adequate notice to the opposing party or to the Court of the underlying basis of the claim.  *See Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996)(bald assertions and conclusions will not suffice to state a claim);  *see also Pike v. City of Mission*, *Kan.,* 731 F.2d 655, 661 (10th Cir. 1984)(finding "allegation ... inadequate under FED.R.CIV.P. 8(a)(2) because it [pled] insufficient facts concerning time, place, actors, or conduct to enable defendants to respond.")

The complaints are poorly written, [4] and the underlying basis of Plaintiff's breach of contract claim is extremely vague .  I agree with Defendants that Plaintiff has given them and the Court almost no information about her breach of contract claim.  Complaint I, Count I alleges "policies" of Defendants against discrimination that constituted an enforceable contract of employment to be free of discrimination based on race, and that because Defendants harassed and

---

[4]  For example, following Paragraph 17 in Complaint II are four paragraphs, (a)-(d), that are completely out of context.  It is incomprehensible to the Court what the source of this language and its mentioned obligations are.  It is obvious that this complaint was not edited or proof- read by counsel.

discriminated against Plaintiff on the basis of her race and/or national origin, the contract was

violated. These "policies" are not identified however, except perhaps by stating that Defendants

had an Equal Opportunity Policy in place.   Paragraph 18 of Complaint II states that the

"foregoing personnel policies and procedures constitute a valid written contract of employment

between Defendant and ... Plaintiff."    There are no "foregoing personnel policies and

procedures" identified.

        In summary, these complaints are, at best, borderline under a Rule 12(b)(6) analysis.  In an

effort to liberally apply notice pleading standards however, the Court will consider Plaintiff's

proof on this issue.

        Plaintiff's response brief states that her breach of contract claim arises from violation of

two policies of the State Personnel Board.  (Ptf's Resp. Brief at p. 18).  Plaintiff refers the Court

to her Exhibits 16 and 17.  Exhibit 16 is the first page only of a document entitled, "New Mexico

Department of Health Human Resources Policy Statement Employee Grievance – Working

Conditions".  Plaintiff refers the Court to Paragraph F, the first sentence of which states

"[E]mployees have the right to file a grievance under this process without fear of reprisal."   Only

the first  five words of the next sentence of Paragraph F are shown.  Plaintiff did not provide the

Court with the remainder of this document, including the remainder of Paragraph F, despite her

heavy reliance on the language of this paragraph.  Plaintiff has not labeled anything as Exhibit 17.

Two pieces of paper follow Exhibit 16 however and appear to be a statement of personnel board

policies, as described in Plaintiff's response brief.  I will assume these two pages are Plaintiff's

Exhibit 17.    Plaintiff relies on this language contained therein, found at Paragraph 13.2:

"Employees have the right to present or make known their complaints, free from interference,

restraint, discrimination, coercion, or reprisal."

Considering Plaintiff's proof liberally, it becomes incumbent on the Court to determine the legal significance, if any, of these exhibits on this contract issue.  At this point in the summary judgment proceedings, I must decide whether Plaintiff has raised a genuine issue of material fact that the quoted language is sufficiently explicit to give rise to reasonable expectations that she had a contractual right to be free from discrimination or reprisal, following the filing of grievances or complaints.  Specifically, I have reviewed her pleadings to determine if she has adduced enough evidence to show there is at least a genuine issue of fact as to whether her claim involves a recognizable contract  in this context under New Mexico law, and a breach thereof.

The Court realizes that the State has been granted immunity from actions based on contract, except those based on a valid written contract.  § 37-1-23(A) N.M.S.A. (1978)(1990 Repl.).  Contrary to Defendants' arguments, it is the law in New Mexico that the term "valid written contract", as contained in this statute, under some circumstances,  may include an implied employment contract even if found in governmental personnel policy provisions.  *See Garcia v. Middle Rio Grande Conservancy Dist.*, 121 N.M. 728, 734 (1996).

An implied contract is an agreement in which parties by course of conduct have shown the intention to be bound by the agreement.  *Newberry v. Allied Stores, Inc.*, 108 N.M. 424, 427 (1989). Language that is purported to create an implied term must be sufficiently explicit to give rise to an implied contract.  *Harbarger v. Frank Paxton Co.*, 115 N.M.665, 668 (1993).  General policy statements of a non-promissory nature contained in an employee handbook, for example, have been held to be insufficient to create an implied contract.  *Sanchez v. The New Mexican*, 106 N.M. 76, 79 (1987).  Declarations of a defendant's general approach to a subject matter have

18

been found to be insufficient to form the basis for a suit for breach of contract. *See Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1465-66 (10th Cir. 1994).

As discussed above, Plaintiff has failed to even provide the Court with a complete version of the policies on which she relies. The Court is hamstrung in its breach of contract analysis, given the shoddily-presented and incomplete evidence before it.

I conclude that the two policy statements relied upon by Plaintiff do not give rise to an implied contract, but appear to be general policy statements of a non-promissory nature. There is no evidence of any intention of the State to be bound to any contract in this regard. Plaintiff's proof is simply insufficient to form the basis for a suit for breach of contract. Plaintiff has failed to show a sufficient factual basis on which a jury could find a breach of contract, and accordingly her breach of contract claims must be **dismissed**.

## V.  Section 1983 Claims

Complaint II, Count III alleges that individual Defendants Valdez and Johnson acted intentionally or purposefully in retaliating against Plaintiff for exercise of her First Amendment rights to free speech and association and her right to petition to government for redress.

The Supreme Court has established a two-part test for evaluating the claims of public employees alleging that their employers have retaliated against them for exercising their First Amendment rights. *See Connick v. Myers,* 461 U.S. 138 (1983). *See also David v. City and County of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996). First, one must determine whether the plaintiff's statements can be "fairly characterized as constituting speech on a matter of public concern." *Connick v. Myers*, 461 U.S. at 146. Second, courts must determine whether the

19

"interests of the [employee], as a citizen, in commenting upon matters of public concern" outweigh the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees. " *Id*. at 142.  The threshold question of whether Plaintiff's speech involved a matter of public concern is at issue here.

In addressing this issue, the fundamental inquiry is whether the plaintiff speaks as an employee or as a citizen.  *Id.* at 147.  Speech that pertains to a public agency's "discharging its governmental responsibilities" ordinarily will be regarded as speech on a matter of public concern. *Id.* at 148.  In contrast, speech relating to internal personnel disputes and working conditions ordinarily will not be viewed as addressing matters of public concern. *Id.*  at 147-49.  In distinguishing between these two categories of speech, courts must consider the "content, form, and context of a given statement, as revealed by the whole record."  *Id.* at 147-48.  "The court will also consider the motive of the speaker to learn if the speech was calculated to redress personal grievances [and therefore spoken as an employee] or to address a broader public purpose [and therefore spoken as a citizen]."  *Workman v. Jordan*, 32 F.3d 475, 483 (10th Cir. 1994).

I have carefully reviewed the content of Plaintiff's charge and grievances.  Her Charge of Discrimination is from the standpoint of an employee who perceives that she is treated less favorably than non-Hispanic employees. (Pltf's Ex. 6).  It is restricted to description of her treatment as an individual and appears to be calculated to redress her personal grievances.  The same characterization applies to Plaintiff's union grievances (Ex. 5, 7, 9, and 11 to Defendants' Ex.A).  These do not assert that Defendants failed to discharge its official duties; no broad public purpose is addressed in any of these documents.

There is simply no dispute that Plaintiff's speech was made in the context of an ongoing

personnel employment grievance. For these reasons I conclude that Plaintiff's statements do not involve matters of public concern under the *Connick* standard.   Consequently, given the content and context of Plaintiff's actions in her role as a State employee, as discussed above, I see no way for her to recover under a First Amendment claim.  Given the frivolousness of her proceeding any further, which would only result in more costs and time being spent by the parties needlessly, I conclude that it is most efficient to dismiss this claim at this juncture, *sua sponte.*

I am aware that Defendants' briefs on this issue are wholly inadequate and that they do not address the *Connick* analysis.  The entry of summary judgment *sua sponte* is warranted only under the following circumstances:  (1)  there is no dispute of material fact;  (2)  the losing party has had an adequate opportunity to address the issues involved, including an adequate time to develop any facts necessary to oppose summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986); *David v. City and County of Denver*, 101 F.3d at 1359;  *Fuller v. City of Oakland*, 47 F.3d 1522, 1533 (9th Cir. 1995).   These conditions are satisfied with regard to Plaintiff's First Amendment claim.  There is no dispute of material fact as to the content of the statements she made prior to the alleged retaliatory acts.  Furthermore, at both the motion to dismiss and motion for summary judgment stages, Plaintiff has had ample opportunity to develop any facts necessary to defeat judgment on this issue.    *See Hand v. Matchett*, 957 F.2d 791, 794 n.2 (10th Cir. 1992)(affirming grant of summary judgment *sua sponte* when the defendants "had adequate opportunity to address all pertinent issues in the case prior to the court's decision").  Unlike the hostile environment claim, that I expressly did not address *sua sponte*, the facts necessary to Plaintiff's claim are already before the Court.  In other words, because of the proof presented on the Title VII retaliation claim, the Court is fully informed as to the content of Plaintiff's speech.

For this reason, I am convinced that proceeding *sua sponte* is fair and appropriate.

   **WHEREFORE**, for the foregoing reasons, Defendants' motion for summary judgment (Docket No. 55) is **granted**.  More specifically:

   1.  John and Jane Does I through X are dismissed from this litigation.

   2.  All Title VII personal capacity claims against individual supervisors are dismissed.

   3.  Plaintiff's Title VII racial discrimination claim is dismissed.

   4.  Plaintiff's Title VII retaliation/reprisal claim is dismissed.

   5.  Plaintiff's Breach of contract claims are dismissed.

   6.  Plaintiff's § 1983 claims are dismissed.

Plaintiff's Title VII hostile work environment claim remains in this litigation, excluding personal capacity claims.

   **FURTHERMORE**, for the reasons previously stated, Defendants' motion to dismiss (Docket No. 4 in CIV 99-456 LH/RLP) is **denied as moot.**

   **IT IS SO ORDERED.**


_____
**UNITED STATES DISTRICT JUDGE**